# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# LAFAYETTE DIVISION

| | |
|---|---|
| Dupree | Civil Action No. 6:19-00734 |
| Versus | Judge Michael J Juneau |
| Mercedes-Benz U S A L L C et al | Magistrate Judge Carol B Whitehurst |

## REPORT AND RECOMMENDATION

Before the undersigned, on referral from the district judge, is a Motion To Dismiss pursuant to Rule 12(b)(2) and Rule 12(b)(6) filed by defendant, Mercedes-Benz USA, L.L.C. ("MBUSA") [Rec. Doc. 20,], Plaintiff, Gene Dupree's, Opposition [Rec. Doc. 24] and MBUSA's Reply thereto [Rec. Doc. 29]. For the reasons that follow, the Court will recommend that the Motion be granted in part and denied in part.

## I. BACKGROUND

This case arises under the Magnuson-Moss Warranty Act and Louisiana's state law redhibition articles. Plaintiff alleges that on March 11, 2013, he purchased a new 2013 Airstream Interstate recreational vehicle ("the Vehicle") from Turan-Foley Motors, Inc. d/b/a Foley RV Center and Airstream of Mississippi ("Foley RV") in Gulfport, Mississippi for the purchase price, excluding fees and costs, of approximately $118,731.00. *R. 1*. The Vehicle was manufactured by Airstream, Inc.

and MBUSA. *Id.* He further alleges he negotiated the sale with Foley RV sales representatives over the telephone from his residence in Lafayette, La.. *Id.,* ¶ 6.

Plaintiff alleges that MBUSA provided an express warranty for the 2013 Sprinter "chassis that was installed by the end manufacturer as a component part of the subject vehicle" ("Warranty"). *R. 20-1, p. 13; 20-2.* The Warranty provides that "[t]he limited warranties contained in this booklet are the only express warranties that the vehicle warrantor makes for your vehicle." *R. 20-2 at 4.* The Warranty further states in pertinent part,

> B. What's Covered
>
> The New Vehicle Limited Warranty covers the cost of all parts and labor needed to repair any item on your Sprinter vehicle when it left the manufacturing plant that is defective in material, workmanship or factory preparation ... These warranty repairs or replacements including all parts and labor connected with them will be made by your authorized Sprinter Dealer at no charge, using new or remanufactured parts.
> ...
>
> C. Items Covered by Other Warranties
>
> The following are covered by separate warranties offered by their makers. They are not covered by the Basic Limited Warranty:
>
> ...
>
>> items added or changed after your Sprinter [chassis] left the manufacturing plant, such as ... items changed because of customization or van conversion.

*Id. at 5.* As to when the Warranty begins, Paragraphs E. and F. provide: "The New Vehicle Limited Warranty begins on ... the date [the customer takes] initial

2

delivery," *Id.*, and "lasts for 36 months from the date it begins or for 36,000 miles on the odometer, whichever occurs first." *Id. at 6*. Also, certain parts integral to the "Federal Emission Warranty ... are warranted for 5 years or 100,000 miles, whichever comes first" including "Engine Emissions Control Systems/Sensors ... Vehicle Speed Sensor (Front Wheels) and (Rear Wheels)." *Id. at 13-14*.

Plaintiff alleges that subsequent to his purchase, the Vehicle was subject to nine attempted repairs performed by authorized dealers and service centers of seller/manufacturer, MBUSA, for problems which caused the Vehicle's "ABS" EPS" and/or "Check Engine" lights to become illuminated, rendering the unit's cruise control and other systems inoperable. *Id. ¶ 14 (a – i)*. Plaintiff further alleges that the most recent repair was attempted and completed by a MBUSA-authorized dealer and service center, Atlanta Classic Cars, Inc., in Duluth, Georgia, after these defective conditions reappeared on March 19, 2019. Plaintiff filed this action on June 11, 2019, asserting redhibition/breach of warranty claims under Louisiana state law and a claim under the federal Magnuson-Moss warranty act.

## II. CONTENTIONS OF THE PARTIES

MBUSA asserts in its motion that Plaintiff's claims against it should be dismissed under Rule 12(b)(2) for lack of personal jurisdiction over MBUSA because Plaintiff cannot establish that MBUSA has constitutionally sufficient minimum

contacts with Louisiana in order to exercise specific or general personal jurisdiction. MBUSA also asserts that Plaintiff's claims are time-barred by the terms of the MBUSA Warranty and the impact of relevant Mississippi and Louisiana laws, and should be dismissed under Rule 12(b)(6).

As to prescription/statute of limitations, Plaintiff argues that when the Vehicle's defective conditions reappeared on March 19, 2019, after eight attempted repairs, the prescriptive period was interrupted and began anew as to MBUSA. Plaintiff further argues MBUSA's "persistent and purposeful contacts" with Louisiana provide sufficient minimum contacts which supports this Court's exercise of personal jurisdiction over MBUSA.

### III.  LAW AND ANALYSIS

**A. Motion To Dismiss Standards**

*Rule 12(b)(2)*

A motion pursuant to Federal Rule of Civil Procedure 12(b)(2) allows a party to move to dismiss for lack of personal jurisdiction. "Where a defendant challenges personal jurisdiction, the party seeking to invoke the power of the court bears the burden of proving that jurisdiction exists." *Luv N' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006). When a court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, the plaintiff need only make a prima facie showing of personal jurisdiction. *See Rd. Sprinkler Fitters Local*

*Union No. 669, U.A., AFL-CIO v. CCR Fire Prot., LLC*, 2018 WL 3076743, at *4 (M.D. La. June 21, 2018).

"Moreover, on a motion to dismiss for lack of jurisdiction, uncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor for purposes of determining whether a prima facie case for personal jurisdiction exists." *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990. Courts may consider "affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery." *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002) (quoting *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985)).

*Rule 12(b)(6)*

When deciding a Rule 12(b)(6) motion to dismiss, "[t]he 'court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.' " *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007). The Court may consider "the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011). "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.' " *In re Katrina Canal Breaches Litigation,* 495 F.3d at 205. In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007),

the United States Supreme Court set forth the basic criteria necessary for a complaint to survive a Rule 12(b)(6) motion to dismiss. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. A complaint is also insufficient if it merely "tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, "[a] claim has facial plausibility when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Twombly*, 550 U.S. at 570. In order to satisfy the plausibility standard, the plaintiff must show "more than a sheer possibility that the defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. "Furthermore, while the court must accept well-pleaded facts as true, it will not 'strain to find inferences favorable to the plaintiff.' " *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004)). On a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 556.

## B. Personal Jurisdiction

"A federal court may exercise personal jurisdiction over a nonresident defendant if (1) the forum state's long-arm statute confers personal jurisdiction over

that defendant; and (2) the exercise of personal jurisdiction comports with the Due Process Clause of the Fourteenth Amendment." *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009). Here, these two inquiries merge into one because Louisiana's long arm statute, La.R.S. 13:3201, permits jurisdiction coterminous with the scope of the due process clause. *Dalton v. R & W Marine, Inc.*, 897 F.2d 1359, 1361 (5th Cir.1990).

To meet the federal constitutional test of due process, two elements must be satisfied: (1) the defendant must have "purposely availed himself of the benefits and protections of the forum state by establishing 'minimum contacts' with the forum state;" and (2) the exercise of jurisdiction over the defendant cannot "offend traditional notions of fair play and substantial justice." *Central Freight*. at 380-381. Due Process is satisfied when "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *Stuart*, 772 F.2d at 1191 (quoting *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

There are two ways to establish minimum contacts: specific jurisdiction and general jurisdiction. *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994). General jurisdiction is proper when the defendant's contacts with the forum state are not only "substantial" but also "continuous and systematic;" furthermore, such contacts need not relate to the pending litigation. *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014).

The contacts must be "extensive" to satisfy the "continuous and systematic" test, such that the nonresident defendant's affiliations with the forum state render it essentially at home in the forum state. *Submersible Sys., Inc. v. Perforadora Central, S.A. de C.V.*, 249 F.3d 413, 419 (5th Cir. 2001). This is a difficult test to meet. *Johnston*, 523 F.3d at 609 (citing *Submersible Sys.*, 249 F.3d at 419). "[E]ven repeated contacts with forum residents by a foreign defendant may not constitute the requisite substantial, continuous and systematic contacts required for a finding of general jurisdiction...." *Johnston*, 523 F.3d at 609-10 "Random, fortuitous, or attenuated contacts are not sufficient to establish jurisdiction." *Id*. at 610.

"When the contacts are less extensive, the court may still exercise specific personal jurisdiction where a 'nonresident defendant has purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities.' " *Choice Healthcare, Inc. v. Kaiser Found. Health Plan of Colo.*, 615 F.3d 364, 368 (5th Cir. 2010). Specific jurisdiction "focuses on the relationship among the defendant, the forum, and the litigation." *Monkton Ins. Services, Ltd. v. Ritter*, 768 F.3d 429, 433 (5th Cir. 2014). "For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." *Id*. This circuit applies a three-step analysis for the specific jurisdiction inquiry: (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its

8

activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable. *Id.* If a plaintiff can successfully establish the first two prongs, then the burden shifts to the defendant to show that exercising jurisdiction would be unfair or unreasonable. *Id.*

### 1. The Court Lacks Personal Jurisdiction Over MBUSA

#### a. General Jurisdiction

MBUSA argues that general jurisdiction is precluded by the Supreme Court's decision in *Daimler AG v. Bauman*, 571 U.S. 117 (2014). *Daimler* established the stringent requirements for general jurisdiction. There, the defendant was a German Corporation sued in California. *Id.* at 750-51. Plaintiffs sought to assert general jurisdiction over the defendant based on the alleged "substantial, continuous, and systematic" contacts in California of one of its subsidiaries, MBUSA. The contacts in California included: (1) MBUSA (which was not a party in the case but was the exclusive importer and distributor of Daimler's vehicles in the United States); (2) multiple California-based facilities including a regional office, a Vehicle Preparation Center, and a Classic Center; and (3) ten percent of the subsidiary's United States' sales and 2.4% of Daimler's worldwide sales. *Id.* at 752. The Supreme Court held

9

these contacts with California were insufficient to make Daimler "at home" in California such that general jurisdiction was present. *Id*. at 761-62.

As to Defendant MBUA in this case, MBUSA is a Delaware corporation with its principal place of business in Atlanta, Georgia. As attested to in the declaration of Paul Cortez, MBUSA's VAN's Aftersales Operations Manager, Southern Region, since August 15, 1999, *R. 20-4*,: (1) MBUSA distributes Mercedes-Benz commercial vehicles in the United States through a network of independent, authorized Mercedes-Benz dealerships *R. 20-3, ¶4;* (2) MBUSA does not manufacture Mercedes-Benz parts or vehicles or assemble motor vehicles in Louisiana, and does not maintain a regional business office in the state, *Id. at ¶¶ 5,6,7*; (3) MBUSA provides service and technical information to Louisiana dealerships regarding repair procedures, field service actions, and dealer bulletin *Id. at ¶ 9*; and, (4) MBUSA warrants new vehicles sold by the independent dealers to Louisiana customers, and issued a limited warranty covering the chassis installed by the end manufacturer as a component part of the subject vehicle, but MBUSA does not directly make the warranty repairs to the vehicles it warrants, *Id. at ¶¶ 10, 11, 12*. Thus, as MBUSA contacts with Louisiana are significantly fewer than the corporate defendant's contacts with California in *Daimler,* this Court does not have general jurisdiction over MBUSA.

*b. Specific Jurisdiction*

MBUSA further argues that, even if MBUSA generally possesses sufficient minimum contacts to Louisiana, Plaintiff's allegations fail to establish the second prong of the specific jurisdiction test—that Plaintiff's claims result from MBUSA's forum-related contacts. The Court agrees that Plaintiff cannot establish specific jurisdiction over MBUSA in this Court.

It is undisputed that Plaintiff purchased the Vehicle in Mississippi and drove it to his home in Louisiana. While Plaintiff generally alleges in his complaint that "Mercedes-Benz" performed repairs to the vehicle, the Declaration of Paul Cortez makes clear that any repairs were made by the independently owned and operated authorized dealer and not by MBUSA. Cortez declares that MBUSA provides service and technical information to Louisiana dealerships regarding repair procedures, field service actions, and dealer bulletins, but attests that while MBUSA provided a warranty on the chassis installed into the Vehicle, it does not directly repair the vehicles it warrants in Louisiana or elsewhere. Thus, *no* activities germane to MBUSA's relation to the Vehicle occurred in Louisiana.

MBUSA cites *Gaillet v. Ford Motor Company*, 2017 WL 1684639 (E.D. Mich., 2017) as a case in which Ford, the defendant, had contacts with Mississippi similar to MBUSA's contacts with Louisiana in this case. There, Ford neither manufactured nor serviced Ford vehicles in Mississippi, nor maintained an office or

11

had employees or representatives in the state. Ford conceded that it advertised in Mississippi, and that a substantial number of Ford vehicles were sold in the state through a network of independent dealerships, and that Ford provided service and technical information to the dealerships, and warranted the vehicles sold in the forum. The district court found that despite these "sufficient minimum contacts," specific jurisdiction was lacking:

> Plaintiffs have not satisfied the second prong, however, for they have failed to establish that their claims arise out of or result from those contacts. First, the vehicle involved in the accident is not among those that Defendant sold to independent dealerships in Mississippi. It was distributed to an independent dealership in Georgia, which sold it to a Georgia resident, who in turn sold it to another Georgia resident. The vehicle only entered Mississippi when Plaintiffs transported it there unilaterally. Second, Plaintiffs have not demonstrated that their claims arise out of or are related to Defendant's advertisements. Finally, Plaintiffs do not allege that their Explorer was supposed to be serviced or was insufficiently serviced under the services Defendant provides in Mississippi. The Court accordingly concludes that Plaintiffs have failed to carry their burden under the second prong of the Fifth Circuit's test.

*Id.* at *1, *4; *see also Drake v. Mercedes Benz USA*, 2018 WL 540874, at *3 (W.D.La., 2018).

In his opposition brief, Plaintiff makes no distinction between specific or general jurisdiction. Rather, Plaintiff maintains that personal jurisdiction over MBUSA exists in light of MBUSA's appointment of an Agent for Service of Process in Louisiana and because it "has and continues to maintain a business office within

the state of Louisiana" and "has and continues to market its products to and sells its products directly to residents of Louisiana within the state of Louisiana." *R. 24, p. 9*. Plaintiff provides no evidence to support any of these statements, but merely qualifies these statements with the generality, "On information and belief." *Id.*

The Court finds that Plaintiff's allegations related to MBUSA's business office and marketing/selling of products in Louisiana are merely conclusional allegations and unsubstantiated assertions which may not be relied on as evidence. *Butts v. Martin*, 877 F.3d 571, 581–82 (5th Cir. 2017). *See also Iqbal*, 556 U.S. at 678 (A pleading does not "suffice if it tenders 'naked assertions' devoid of 'further factual enhancement'"). Moreover, these allegations are contrary to the Declaration of Paul Cortez.

As to Plaintiff's contention that appointment of an agent for service of process is sufficient for the Court to find personal jurisdiction over MBUSA, this contention was dismissed in the Court's ruling of the motion filed by MBUSA's co-defendant, Airstream. *See R. 15, 18.* As previously held by this Court, it is long established by the Fifth Circuit and the courts in this circuit that the "mere service on a corporate agent automatically confers general jurisdiction displays a fundamental misconception of corporate jurisdiction principles. This concept is directly contrary to the historical rationale of *International Shoe* and subsequent Supreme Court assertion decisions." *Wenche Siemer v. Learjet Acquisition Corp*. 966 F.2d 179, 181-

83 (5th Cir. 1992), cert denied, 506 U.S. 1080 (1993) ([w]hile ... being qualified to do business, may on its face appear to be significant, it is of no special weight in evaluating general personal jurisdiction."). *See, e.g., Mercury Rents, Inc. v. Crenshaw Enterprises Ltd.*, 2017 WL 2382483, at *2 (W.D.La., 2017) (same); *Crochet v. Wal-Mart Stores, Inc.*, 2012 WL 489204, at *4 (W.D.La.,2012) (same); *DNH, L.L.C. v. In-N-Out Burgers*, 381 F.Supp.2d 559, 565 (E.D.La.,2005) ("Qualifying to do business in a state and appointing an agent for service of process there do not amount to a 'general business presence' of a corporation that could sustain an assertion of general jurisdiction."). *See also Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437, 445 (1952) (refusing to find jurisdiction based solely upon service; stating that a corporation having a registered agent in the forum state was "helpful but not a conclusive test" in the jurisdictional equation).

Thus, MBUSA is neither "at home" in Louisiana nor has contacts with Louisiana that even scarcely approach the degree of "substantial" and "continuous and systematic" for purposes of general personal jurisdiction. *See Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014).

For the foregoing reasons, the Court finds that it lacks personal jurisdiction over MBUSA and that Plaintiff's claims against MBUSA must be dismissed without prejudice. Because the Court finds that personal jurisdiction over the defendants is lacking in this Court, it does not reach the other base (under Rule 12(b)(6)) for

dismissal asserted in the motion. *Pervasive Software Inc. V. Lexware GMBH& Company KG*, 688 F.3d 214, 232 (5th Cir. 2012) ("[P]ersonal jurisdiction claims are threshold grounds for denying audience to a case on the merits, and require that the courts reach the threshold claims before reaching claims on the merits.").

## IV. CONCLUSION

For the foregoing reasons, the undersigned recommends that the Motion To Dismiss Plaintiff's Complaint [Rec. Doc. 20] be **GRANTED IN PART** as to MBUSA's Motion under Rule 12(b)(2) and **DENIED IN PART AS MOOT** as to MBUSA's Motion under Rule 12(b)(6) and all of Plaintiff's claims be **DISMISSED WITHOUT PREJUDICE** based on MBUSA's lack of personal jurisdiction.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed.R.Civ.P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party=s objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual

15

findings or the legal conclusions accepted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir.1996).

**THUS DONE AND SIGNED** this 26th day of December, 2019.

*[signature]*

CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE